

# IN THE
# TENTH COURT OF APPEALS

## No. 10-08-00185-CR

**THE STATE OF TEXAS,**

                                        **Appellant**

 **v.**

**PAUL DAVID ROBINSON,**

                                        **Appellee**


**From the County Court
Freestone County, Texas
Trial Court No. 21659**


# O P I N I O N

Paul Robinson, charged with driving while intoxicated (second offense), filed a motion to suppress blood-test evidence, which the trial court granted. The State appeals, asserting in one issue that the trial court erred in granting the motion. We will affirm.

## Jurisdiction

We first address Robinson's assertion that we lack jurisdiction because the State's notice of appeal was untimely. The trial court orally granted the motion to suppress at

the conclusion of a May 14, 2008 hearing. The trial judge then signed an order that states:

> On *May 14* [italics in handwriting], 2008, came on to be considered Paul David Robinson's Motion to Suppress Blood Test," and said motion is hereby

> (Granted)     ~~(Denied)~~

The order is signed in handwriting by the trial judge, but there is no signing date. The clerk's file stamp shows that the order was filed on May 27, 2008, at 4:30 p.m.

The State's first notice of appeal was filed on May 22. It is signed by an assistant county attorney, and it lacks the prosecuting attorney's certification "to the trial court that the appeal is not taken for the purpose of delay and that the evidence, confession or admission is of substantial importance in the case." TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (Vernon Supp. 2009); *see also id.* art. 44.01(i) (excluding "assistant prosecuting attorney "as a "prosecuting attorney").

A second order much like the first is also in the record, but it reads:

> On *May ~~14~~ 27th* [italics in handwriting], 2008, came on to be considered Paul David Robinson's Motion to Suppress Blood Test," and said motion is hereby

> (Granted)     ~~(Denied)~~

And instead of a handwritten signature by the trial judge, it has an obviously stamped signature of the judge. Moreover, the clerk's file stamp is different, being located on a different part of the order and signed by a different clerk, yet it also reflects a filing date and time of May 27 at 4:30 p.m.

Thereafter, a second notice of appeal was filed on May 30. It is signed by the

county attorney and has the certification required by article 44.01(a)(5).

Robinson argues that the order was signed on May 14 and that the May 30 notice of appeal is untimely because it was not filed within fifteen days. However, in 2007 article 44.01 was amended to increase the time period for a State's notice of appeal from fifteen to twenty days. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(d); Act of September 1, 2007, 80th Leg., R.S., ch. 1038, §§ 2, 4, 2007 Tex. Gen. Laws 3592. Because a proper notice of appeal was filed within twenty days of May 14, we have jurisdiction.

## Suppression

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor; and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex.

Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652-53.

When reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818-19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id*. at 819.

The trial "judge may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted. This is so because it is the trial court that observes first hand the demeanor and appearance of a witness, as opposed to an appellate court which can only read an impersonal record." *Ross*, 32 S.W.3d at 855 (footnoted citations omitted).

One of the grounds in the motion to suppress is that the person who withdrew Robinson's blood specimen was not a qualified technician under the law.[1] *See* TEX.

---

[1] Other suppression grounds in the motion are that the warrantless arrest lacked probable cause and that Robinson did not consent to the blood draw. The trial court issued a finding that "the Court heard evidence in this cause and did not find grounds for suppression based on the warrantless arrest or

TRANSP. CODE ANN. § 724.017(a) (Vernon Supp. 2009) ("Only a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse may take a blood specimen at the request or order of a peace officer under this chapter."). The trial court issued a finding "that the evidence did not prove the blood was taken by a person listed in the statute as qualified under the law to withdraw the specimen."

Robinson had the initial burden to produce evidence that the statute was violated and that the evidence should be excluded, and upon meeting that initial burden, the burden of proof shifted to the State. *See Kelly v. State,* 204 S.W.3d 808, 819 n.22 (Tex. Crim. App. 2006); *Wilson v. State,* 277 S.W.3d 446, 448 (Tex. App.—San Antonio 2008) ("It is 'settled law that the burden of proof is initially on the defendant to raise the [article 38.23] exclusionary issue by producing evidence of a statutory violation, and that this burden then shifts to the State to prove compliance.'"), *aff'd,* No. PD-0307-09, 2010 WL 715253 (Tex. Crim. App. Mar. 3, 2010) (quoting *Pham v. State,* 175 S.W.3d 767, 772 (Tex. Crim. App. 2005)); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005) ("[n]o evidence obtained by an officer ... in violation of ... [the] laws of the State of Texas ... shall be admitted in evidence against the accused on the trial of any criminal case"). The party with the burden of proof assumes the risk of nonpersuasion. *Kelly,* 204 S.W.3d at 819.

The following colloquy occurred at the beginning of the suppression hearing:

> THE COURT:  … And we are here on a Motion to Suppress the blood test. …  Since it's your motion, will you - -

---

on the voluntariness of defendant's consent in the taking of the blood specimen."  Robinson has not appealed those findings, and they are thus not before us.

[DEFENSE]:  Yes, ma'am.

THE COURT:  - - proceed.

[DEFENSE]:  I'll call Deputy Burcher [*sic*].

[STATE]:  Well, Judge, the proper way to proceed on this, since it's - - and we'll stipulate that it's without a warrant, and then it's our burden to prove that - - I mean, we - - we see what the motion is so I think it's  - - I think we should actually go first, but - -

[DEFENSE]:  And I have no objection to that, Your Honor.  The facts are going to come out one way or the other.

THE COURT:  All right.  All right.  I just thought that since it was your motion, that - -

[DEFENSE]:  Yes, ma'am.  If they stipulate it was a warrantless arrest - -

[STATE]:  We'll stipulate there was no warrant.

[DEFENSE]:  Then as long as they stipulate to that, then I think the burden shifts.

THE COURT:  All right.  They're stipulating to that then.  All right.  Then the State will go first.

[STATE]:  Okay.  We'll call Deputy Burcher [*sic*] too.[2]

The only witness at the suppression hearing was former Freestone County Deputy Josh Vercher, who testified he was patrolling on Highway 84 around 1:10 a.m. when a vehicle headed toward him swerved into his lane, causing him to have to take

---

[2]    The above procedural colloquy has resulted in the amplified and concerned dissent that the burden of proof will hereafter be misplaced in this arena of Texas jurisprudence.  The State ultimately chose to go forward and the evidence was fully developed.  Significantly, the State accepted the burden of proof in the trial court, and in this appeal, the State does not argue that the burden of proof was misplaced.

Because the dissent has been designated for publication, this opinion is also published for clarity and context.

State v. Robinson                                                                                          Page 6

evasive action. Vercher turned around and stopped the vehicle, which was being driven by Robinson. After conducting field sobriety tests, Vercher arrested Robinson for DWI and took him to the Freestone County Jail.

Vercher said that Robinson agreed to a blood sample, so he took him to East Texas Medical Center in Fairfield where Robinson's blood was drawn: "We handcuffed him back up, drove him to the hospital, and took a specimen of his blood and then brought him back to the jail and booked him back in." Vercher then mailed the sample to the DPS in Austin, and the report showed blood alcohol of .14 percent.

The State passed the witness, and on cross-examination, a videotape of the stop was shown, and it contradicted some of Vercher's testimony. For example, the officer initially said he did not leave Robinson at the jail for two to three hours before the blood draw to respond to a home intrusion where he made several arrests, but the videotape showed otherwise. Vercher also initially said that during the stop Robinson consented to a breath test, but he acknowledged that Robinson refused a breath test on the videotape. Vercher agreed that his initial testimony, his written report, and the videotape all conflict.

As for the person who drew Robinson's blood, Vercher said he did not know who the person was or remember what the person looked like. It was his first time to take a suspect to a hospital to have blood drawn. He did not write down the person's name, and he does not remember which arm the blood was drawn from, who prepared the site for the draw, or how the site was prepared.

At this point, we believe that Robinson met his initial burden to produce

evidence to support the trial court's finding that the person who withdrew Robinson's blood specimen was not a qualified technician under the law. The burden of proof then formally shifted to the State to show that section 724.017(a) was complied with.

On re-direct examination, Vercher said that a "nurse" in the emergency room took Robinson's blood sample. But on re-cross-examination, Vercher then admitted that his report states that an "emergency room technician" signed and sealed Robinson's blood specimen. In response to whether that emergency room technician was the same person as the "nurse" who took the blood or was just someone who witnessed it, Vercher said nonresponsively, "The same guy that took the blood has to sign off and seal it and put it back in the vile [*sic*]." Vercher did not recall whether the person did anything with the tube of blood, such as swirling it five times.

The State argues that the trial court erred in granting the motion to suppress because the testimony of the nurse who withdrew Robinson's blood was not required. The State cites cases holding that the person who drew the blood need not testify and that the person's missing testimony goes to the weight of the evidence, but not to its admissibility. *See, e.g., Yeary v. State*, 734 S.W.2d 766, 769 (Tex. App—Fort Worth 1987, no pet.); *Beck v. State*, 651 S.W.2d 827, 829 (Tex. App.—Houston [1st Dist.] 1983, no pet.). Robinson replies that the trial court granted the motion to suppress not because the nurse did not testify, but because Vercher's testimony was not sufficiently credible for the trial court to have believed his testimony that a nurse drew Robinson's blood. Given Vercher's testimony on cross-examination and the trial judge's comments at the conclusion of the hearing, Robinson's position is much more persuasive.

During closing argument on the motion to suppress, the following exchange occurred between the trial judge and the assistant county attorney:

> THE COURT: But the State to me has not proved, has not met the burden to prove who took the blood and that they were a qualified person under the statute.
>
> [STATE]: Judge if - - if - - under the statute I think it lists - -
>
> THE COURT: It does.
>
> [STATE]: - - the medical personnel. You don't have to name the name.
>
> THE COURT: It doesn't, but I haven't - - the State has not met the burden that it was one of these persons that took it.
>
> …
>
> THE COURT: Well, based on the testimony, I am going to suppress the blood test.

Based on the trial judge's statements and the record as a whole, we disagree with the State that the motion to suppress was granted only because the alleged nurse did not testify. It instead appears that the trial court did not believe the State met its burden of proof because Vercher's testimony about who drew the blood was inconsistent, not credible, or both. Because we must almost totally defer to the trial court's evaluation of Vercher's credibility and demeanor, and the State assumed the risk of nonpersuasion, we cannot say that the trial court erred or abused its discretion in granting the motion to suppress. We overrule the State's issue and affirm the trial court's order.

REX D. DAVIS
Justice

Before Chief Justice Gray,
   Justice Reyna, and
   Justice Davis
   (Chief Justice Gray dissenting)
Affirmed
Opinion delivered and filed June 16, 2010
Publish
[CR25]