In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-22-00043-CR
NO. 09-22-00044-CR

_____

DAVID WILLIAM RUNYON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause Nos. 21-03-03965-CR and 21-03-03966-CR

OPINION

After the trial court denied David William Runyon's motion to suppress, he pleaded guilty to two indictments charging him with possession of child pornography.[1] Based on these pleas, the trial court

---

[1] *See* Tex. Penal Code Ann. § 43.26(a).

found Runyon guilty, and in punishment, the trial court assessed concurrent, seven-year sentences.

In the two cases, the record shows the State obtained Runyon's indictments based on images it extracted from Runyon's laptop, which police searched after obtaining a search warrant. To obtain the search warrant, police relied on information they were told about what was on the laptop by a woman living with Runyon, his then girlfriend, whom we will call *Sally*.[2] At issue in the appeal is whether, as Runyon argues, the evidence shows that Sally illegally accessed Runyon's laptop before providing the information on it to the police.

On appeal, Runyon argues the trial court abused its discretion in failing to suppress the images police seized from his laptop. Runyon argues that because Sally didn't have his effective consent to access his laptop when she did, the images she found were obtained in violation of the Computer Security statute, which prohibits a persons from accessing a computer owned by another without the owner's effective consent.[3]

---

[2]A pseudonym.
[3]*Id.* § 33.02 (Breach of Computer Security).

2

Runyon concludes that Sally's search of his laptop, which he argues the evidence in the suppression hearing shows was obtained without his effective consent violated the Computer Security statute, which made the search conducted by police even though police obtained a warrant illegal too.

After a careful review of the evidence, we conclude the evidence addressing the issue of whether Sally had Runyon's effective consent to access the laptop is conflicting. The trial court's finding that Runyon failed to carry his burden of persuasion on the effective consent issue is a fact issue, which is tied to the trial court's express or implied determinations of historical facts. Because the trial court properly applied the law in concluding the search warrant was not based on evidence illegally obtained by another given its historical findings of fact, we conclude it did not err in denying Runyon's motion to suppress.[4] For the reasons explained below, we will affirm.

---

[4]Tex. Code Crim. Proc. Ann. art. 38.23(a) (providing that "[n]o evidence obtained by an officer or other person in violation of the Constitution or laws of the State of Texas, or of the constitution or laws of the United States of America shall be admitted in evidence against the accused on the trial of any criminal case").

## The Hearing on the Motion to Suppress

Three witnesses testified in the hearing the trial court conducted on Runyon's motion to suppress: (1) Sally; (2) Runyon; and (3) Jarod Tunstall, a detective employed by the Montgomery County Constable's Office, Precinct 3. Detective Tunstall signed the probable cause affidavit, which police used to support the search warrant that a magistrate signed to obtain Runyon's laptop. The seizure of Runyon's laptop and a search of its hard drive led to the discovery of the images that were the subject of Runyon's motion to suppress.

The testimony in the hearing shows that one day in July 2020, when Runyon was at work, Sally accessed Runyon's laptop to find out what he was doing. Sally did so, she said, because she had a strange feeling in her gut. According to Sally, when she saw Runyon's laptop that day, it was on, the screen was visible, it was unlocked, and "on an ESPN page." The laptop was in one of the guest bedrooms in Runyon's home. Runyon and Sally had been living together in the home for about a year before Sally saw the images on Runyon's laptop that she reported to the police. According to Sally, when she accessed the laptop, she saw a file folder

4

labeled "girls." In that folder, she saw a file, which was labeled with the name of her friend who had visited in their home. On opening it, Sally discovered that the folder had a file in it that was a recording of her friend getting undressed in the home's guest bedroom. Then, she noticed other files in the folder that had images of her and Runyon having intercourse, which according to Sally had been taken without her knowledge or consent. After seeing these files, Sally looked at other folders on Runyon's laptop, and when she looked in the laptop's download folder, she found that Runyon had downloaded images of naked children.

Sally reported the presence of the images on Runyon's laptop to federal and state authorities. After police executed the search warrant on Runyon at his home, Sally testified Runyon told her: "[H]is biggest regret that day was leaving it unlocked. He recalled the day that he left it unlocked."

Following the hearing, the trial court issued findings of fact and conclusions of law. Among its findings, the trial court found:

. . .

5. Detective Jarod Tunstall's testimony was credible.

. . .

10. . . . [Sally's] testimony was credible.

. . .

16. [Runyon] allowed [Sally] to use his silver Hewlett Packard laptop on multiple occasions prior to July 22, 2020.[5]

17. [Runyon] was aware that [Sally] used Runyon's silver Hewlett Packard laptop on multiple occasions prior to July 22, 2020.

18. [Sally] used numerous electronic devices belonging to [Runyon] at different times while living with him in their home.

19. There were never any express or implied statements concerning the use of electronic devices in the home that [Sally] shared with [Runyon].

20. There were no written statements, verbal statements, or any other evidence that would have suggested to [Sally] that she did not have permission to access [Runyon's] silver Hewlett Packard laptop.

. . .

22. [Runyon] never restricted [Sally's] access to his Hewlett Packard laptop.

---

[5]Though some evidence shows Sally accessed the laptop on July 22, she said she accessed it on July 21st. We've used July 21st as the date of access since that date is consistent with Sally's testimony.

23. [Runyon] never told [Sally] not to access his silver Hewlett Packard laptop.

24. [Runyon] shared access to numerous electronic devices in the home with [Sally].

25. [Sally] did not knowingly access [Runyon's] silver Hewlett Packard laptop without his effective consent.

Relying on these findings, the trial court determined that Runyon failed to carry his burden to establish the search of his computer violated his rights and denied Runyon's motion to suppress.

Turning to the hearing on which the trial court's findings are based, the evidence admitted in the hearing shows that Sally testified she met Runyon in May 2018. They began dating about four months later, eventually moving into a house that Runyon bought in May 2019. Even though they were not married, Sally and Runyon shared certain expenses incurred when they lived together in the home.

Sally and Runyon lived in the home for around a year before breaking up. While together, Sally explained, there was no express or implied agreement that things were "off limits" in the home. According to Sally, they mostly "shared everything[.]" Explaining the extent to which she and Runyon shared their possessions, Sally pointed to an

expensive deck of cards, which she said were owned for the most part by Runyon. The cards were for a game known as "Magic: The Gathering," which Sally said were worth around $30,000.

Even though Sally and Runyon owned the electronic devices kept in the home separately, Sally discussed how she and Runyon shared them. Sally testified she had four such devices: a tablet computer, a laptop computer, and two cell phones. By Sally's account, Runyon had a laptop, a cell phone that worked, and a cell phone that didn't.

Sally testified that she and Runyon also shared around thirteen electronic game platforms, manufactured by Sony and Nintendo, which they separately owned. When asked whether she needed Runyon's permission to use "any of the electronic devices you guys had in the house[,]" Sally answered: "No." And when asked whether "there were ever any statements expressed or implied concerning when you could use certain electronic devices or not in the home[,] Sally answered: "No."

Turning to Runyon's laptop, Sally testified that the day she discovered the pornographic images, his computer "wasn't password protected." That said, she agreed that she and Runyon never specifically

8

discussed her use of his laptop or whether she could use his laptop at any time. To be sure, Sally conceded that generally, Runyon's laptop was protected by a password, yet no one ever asked to explain why it wasn't password protected in July 2020 when she found and then reported that it had pornographic images of children on it to the police.

Sally also described how she had used Runyon's laptop while living with him since she first moved in. According to Sally, she had used Runyon's laptop to update her resume and to play "Arena," an online game. When asked whether she was alone with the laptop when she did these types of things, Sally replied: "Like, he was maybe in the room, but, like, I was by myself." Sally then clarified her testimony, explaining that when she played Arena on Runyon's laptop, he was in the room. Sally added that on a few other occasions, she and Runyon had used his laptop to watch baseball games.

When Runyon's attorney asked Sally whether she believed she "could access [Runyon's] computer at any time [after updating her resume and playing Arena on his laptop,] Sally answered: "I don't know." Runyon's attorney also asked Sally whether she had Runyon's effective

consent to access his computer, as he asked her the following leading question: "That on July 22nd, you would agree that you knowingly accessed [Runyon's] computer without [his] effective consent that afternoon?" Sally answered: "I think it was the [July] 21st. I don't know." In an effort to clarify his question, Runyon's attorney then told Sally that *effective consent* included "consent by a person legally authorized to act through the owner." Yet after explaining that to Sally, Sally stuck with her same answer to the question about effective consent and repeated her answer: "I don't know."

Sally conceded that Runyon never gave her his express permission to use his laptop the day she accessed it and found it contained pornographic images of children. Sally also agreed that she waited until Runyon left home, consciously decided to enter the guest bedroom, and then was checking into what Runyon was doing by "snooping" around in his laptop based on her fear that he might be cheating.

Even though Sally agreed Runyon was not home when she accessed his laptop, she said he never told her or did anything that suggested to her that she couldn't access his laptop when he wasn't present. For

10

instance, Sally said that when she used Runyon's computer to update her resume, Runyon didn't place any limitations on her use. Likewise, when she used his laptop to play an online game, Arena, she never asked Runyon for his express consent before using his laptop. According to Sally, she never had a conversation with Runyon where he told her she could only use his laptop for a limited purpose, and he never implied to her that she could only use his laptop while playing Arena online.

During the hearing, Sally did admit she felt "guilty for snooping" after accessing Runyon's laptop. But she testified her feelings depended on her sense of morals. She explained:

> A: I guess morally. I just never – I don't know. Morally, I feel like it wasn't the best move, but I never in the two years wanted – I don't want – to be that kind of person. I wanted to not snoop, but – for the most part, I feel like it's not the greatest, but –
>
> Q: Sure.
>
> A: – in my gut, I just didn't feel like something was right, and I think that's what I felt.

While questioned about her feelings as they related to her accessing Runyon's computer, Sally maintained that Runyon never did prohibit her from accessing his laptop.

Detective Jarod Tunstall, the investigating officer who responded to Sally's report, testified in the hearing that his first contact with Sally was on the phone. She agreed to come in for an interview. Detective Tunstall interviewed Sally twice in August 2020, and the recordings of the interviews were admitted into evidence in the hearing. During the recorded interviews, Sally told the detective she accessed Runyon's laptop after he left home because "something told me to snoop[.]" In the recording, Sally is heard explaining that she accessed the laptop because it was unlocked. She also told the detective she didn't have Runyon's password.

Detective Tunstall explained that he relied on the information Sally gave him to obtain the search warrant police used to seize Runyon's laptop and search it for evidence of a crime. When the detective was asked whether in preparing his investigation and report if he "had any concern about whether or not [Sally's] access to [Runyon's] laptop was unlawful[,]" the detective answered: "No, I did not."

Runyon was the third witness who testified in the hearing. Although he disputed some of Sally's testimony, he didn't dispute her

12

claim he left his laptop on and unlocked on the day she found the images that were the subject of his motion, nor her claim that there were occasions in which he had allowed her to use his laptop in the past. To be clear, Runyon's position was that while she could use his laptop, she could only do so on those occasions when they were in the same room.

Turning to Runyon's account about their general use of passwords, Runyon testified that he and Sally didn't share any passwords with each other except to the online game, Arena. Runyon disputed Sally's testimony that he and Sally shared everything, for example he specifically disputed her claim that they shared access to the deck of cards for "Magic: The Gathering." Instead, Runyon said, their custom was to ask permission if one of them needed to use the other person's items. Still, Runyon agreed that he and Sally had "some form of shared access" to around twenty electronic devices. That said, Runyon didn't clearly spell out the terms of the agreements he claims he had with Sally as to their shared use of the twenty electronic devices he agreed that they shared, except he did say that if he "ever used [two of Sally's electronic gaming platforms, which Runyon identified,] I believe I asked her

permission[.] . . . [But] "I'm not sure if I would describe it as a requirement or not."

Turning to Runyon's laptop, Runyon testified that generally, he kept his laptop protected by a password, which he didn't share with Sally. But he thought that Sally might have had it, because his password was "onions," and Sally had seen him unlock his laptop using his password before. For example, when Sally used his laptop to update her resume, she asked if she could use the laptop, he unlocked it, entered his password, opened the word-processing program for her, and handed the laptop to her. As to Sally's testimony about using his laptop to play Arena, Runyon testified he couldn't recall if she used his laptop for that purpose, but if she did, he "would have logged onto the [laptop], unlocked it, entered the password, brought up Arena and then handed [the laptop] to her to play on her account."

Runyon testified he would have expected Sally to have asked him for his permission before she used his laptop. Runyon explained that his laptop had a password, and it was his practice to "lock it and it would have needed a password to get into it." Still, when questioned about

whether the laptop was locked when Sally discovered the images she later reported to the police, Runyon testified: "I don't remember how I left it that day when I left for work." According to Runyon, however, even if Sally could have accessed his laptop without entering his password because he left it on and open that day, it didn't mean that he intended to give Sally his effective consent to access his laptop without his express permission. Runyon added, he never gave Sally "a blanket effective consent to go into" his laptop.

While Runyon explained what he intended, he also agreed that at best what he intended was implied, not express. He agreed that he never told Sally, "Don't ever go on my laptop." And he agreed that when Sally either used his laptop or had asked him whether she could use it, he never told her she could not.

After the trial court denied his motion to suppress, Runyon pleaded guilty to two counts of child pornography. Based on the pleas, the trial court sentenced Runyon to serve concurrent, seven-year sentences.

Standard of Review

Texas law requires that evidence obtained by a person in violation of the Constitution be excluded even if the person has acted in good faith when investigating a crime.[6] The exclusionary rule created by the exclusionary statute, Article 38.23, encompasses private individuals even though the private individual was not when gathering the evidence acting as an agent of the state.[7] Under Article 38.23(a) the defendant bears the initial burden to show a "causal connection" between the alleged illegality and the evidence that is the subject of the motion to suppress.[8] The evidence Runyon sought to suppress relates to images found on his laptop by his girlfriend, images he claims she knowingly accessed without his permission, which he alleged made the search illegal under Texas law because the images were found as a result of a violation of the Texas Computer Security statute.[9]

---

[6]*Id.*
[7]*See State v. Johnson*, 939 S.W.2d 586, 587 (Tex. Crim. App. 1996).
[8]*See Wehrenberg v. State*, 416 S.W.3d 458, 468 (Tex. Crim. App. 2013); *Pham v. State*, 175 S.W.3d 767, 772 (Tex. Crim. App. 2005).
[9]Tex. Penal Code Ann. § 33.02.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review.[10] In conducting our review, "[w]e afford almost total deference to the trial court's findings of historical facts that are reasonably supported by the record and to its resolution of mixed questions that turn on credibility or demeanor[.]"[11] "We review de novo a trial court's legal conclusions and its resolution of mixed questions that do not turn on credibility and demeanor."[12] As the judge of the credibility of the witnesses in a hearing on a motion to suppress, the trial court is the sole judge of the credibility of the witnesses.[13]

A defendant claiming evidence is inadmissible under Article 38.23 because the evidence was illegally obtained by an individual not acting on behalf of the government has the initial burden to establish the individual obtained the evidence in violation of the law.[14] "Only when this burden is met does the State bear a burden to prove compliance."[15] Still,

---

[10]*Lopez v. State*, 610 S.W.3d 487, 494 (Tex. Crim. App. 2020); *Turrubiate v. State*, 339 S.W.3d 147, 150 (Tex. Crim. App. 2013).
[11]*Id.*
[12]*Id.*
[13]*State v. Ross*, 32 S.W.3d 853, 855 (2000).
[14]*State v. Robinson*, 334 S.W.3d 776, 779 (Tex. Crim. App. 2011).
[15]*Id.*

"the burden of persuasion is properly and permanently placed upon the shoulders of the moving party."[16] "When a criminal defendant claims the right to protection under an exclusionary rule of evidence, it is his task to prove his case."[17]

When, as here, the trial court makes findings of fact, we determine whether the evidence when viewed in the light most favorable to the trial court's ruling supports the trial court's findings.[18] We will reverse the trial court's ruling on a motion to suppress "only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'"[19] In our review, we afford the party that prevailed on the motion the strongest legitimate view of the evidence and give that party all inferences that may be reasonably drawn from the evidence.[20] We will uphold the trial

---

[16]*Pham*, 175 S.W.3d at 773.

[17]*Id.* (cleaned up).

[18]*State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006); *see also State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013).

[19]*State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)).

[20]*Duran*, 396 S.W.3d at 571.

court's ruling if it is reasonably supported by the record and is correct on any theory of law that applies to the case.[21]

Analysis

On appeal, Runyon argues the record does not support the trial court's finding that Sally did not knowingly access Runyon's laptop without Runyon's effective consent. According to Runyon, the trial court abused its discretion in making this finding because in Runyon's view, the evidence shows his "laptop remained off limits unless he was physically present." As Runyon sees it, the record shows the trial court should have inferred from the evidence in the hearing that because he was not at home when Sally accessed his laptop, by accessing it she did so without having his effective consent. Runyon concludes that because the evidence doesn't support the trial court's finding that Sally did not knowingly access his laptop without his effective consent, her search of his laptop was illegal because it violated the Computer Security statute, making the State's seizure of his laptop and its search illegal too.[22]

---

[21]*Story*, 445 S.W.3d at 732; *Turrubiate*, 399 S.W.3d at 150.
[22]Tex. Penal Code Ann. § 33.02.

Under the Computer Security statute, "[a] person commits an offense if the person knowingly accesses a computer, computer network, or computer system without the effective consent of the owner."[23] To establish a violation of this statute, the evidence must show the person who accessed the computer did so when they knew they didn't have the effective consent of the computer's owner to access the device.[24] Whether or not someone acts knowingly is left to the factfinder based on the inferences that the factfinder must draw from the evidence admitted in the trial based on the conduct of the person being accused of engaging in the conduct prohibited under the law.[25] Since Sally is the person Runyon accused of violating the law in his motion to suppress, his motion and the evidence in the hearing focused on whether Sally, when accessing Runyon's laptop, knew she didn't have his permission to access it, and whether the evidence police obtained following Sally's report was

---

[23]*Id.* § 33.02(a).

[24]*Thomas v. State*, 586 S.W.3d 413, 421 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).

[25]*See* Tex. Penal Code Ann. § 6.03(b) (defining what it means under the Penal Code when a statute requires proof that a person acted *knowingly* or *with knowledge*).

"evidence obtained" in violation of the Constitution or the Texas exclusionary statute.[26]

On appeal, Runyon argues he never gave Sally his express or apparent consent to use his laptop "while he was not at his home." But under the Computer Security statute, the owner's express consent isn't required. That's because the Penal Code allows consent to be proven by showing an owner's consent was either "express or apparent."[27]

During the hearing, Sally testified that she and Runyon never discussed that they wouldn't access each other's "cell phones and laptops[.]" As the factfinder in the suppression hearing, the trial court could, in the exercise of its sound discretion, credit Sally's testimony that no express agreement existed about accessing each other's cell phones or laptops. The trial court could also reasonably reject Runyon's testimony to the contrary, suggesting that Sally should have understood from a conversation they had before she moved in with him that she didn't have his express permission to use his laptop. In that conversation, according

---

[26]*See* Tex. Code Crim. Proc. Ann. art. 38.23(a).
[27]Tex. Penal Code Ann. § 1.07(11).

to Runyon, they discussed another couple who they knew that were having a problem in their relationship based on a breach of trust. As a result, the other couple had agreed to share all passwords "between them because they could not trust each other[.]" Runyon testified that during that conversation, he and Sally agreed that "we did not want that for our relationship." From that conversation, Runyon argues, Sally should have understood that Sally didn't have his permission to access his laptop, even though the conversation occurred over a year before Sally moved into his home.

Turning to the issue of apparent (or implied) consent, Runyon argues the trial court failed to address material, uncontested facts that show Sally didn't have "consent to access [Runyon's] laptop when he was not present[.]" He also contends the trial court's findings fail to address uncontested facts, which he argues show that Sally knew she didn't have Runyon's consent to access his laptop. We disagree. The evidence about whether Sally knew of an implied agreement prohibiting her from accessing Runyon's laptop is conflicting. Under the bifurcated standard that we must use to review suppression rulings, we are bound by the trial

court's findings on issues related to credibility and "who did what, when, where, how, or why[.]"[28]

Here, the trial court heard testimony that before Sally found the pornographic images on Runyon's laptop, Runyon allowed Sally to use his laptop and to access many other electronic devices that he owned in the home. On the day Sally found the images on Runyon's laptop, Runyon left the laptop on, unlocked, and he didn't take his laptop with him to work. By Runyon's telling, the fact that Sally admitted she felt guilty because she was "snooping" shows she knew she didn't have Runyon's permission to access his laptop. According to Runyon, the trial court's finding that Sally did not knowingly access his laptop without his permission conflicts with this evidence and with Sally's testimony that she knew his laptop was protected with a password, which he didn't share with her. Runyon also argues that in its findings, the trial court failed to consider Sally's testimony that when she accessed Runyon's laptop, Sally admitted she knew it wasn't right: "[I]n my gut, I just didn't feel like something was right, I think that's what I felt." Runyon concludes that

---

[28]*Baird v. State*, 398 S.W.3d 220, 226 (Tex. 2013).

the evidence is all consistent and shows that Sally "accessed [Runyon's] laptop without his permission and knew he had not consented to her use of the laptop when he was not present."

First, we will address why we disagree with Runyon that Sally's testimony she was snooping when she accessed Runyon's laptop isn't inconsistent with the trial court's findings that Sally did not knowingly access Runyon's laptop without his effective consent. As commonly used, the word *snoop* means "to look or pry in a sneaking or meddlesome manner : search intrusively or pryingly."[29] Runyon argues that because Sally testified that she was snooping when she accessed Runyon's laptop, Sally knew she didn't have his permission to use his laptop when he wasn't there. Even though we concede the trial court could have inferred Sally's snooping meant that she didn't have Runyon's permission to access his laptop, we must view her testimony from the totality of the circumstances and in the light that is most favorable to the trial court's

---

[29]*Snoop*, Webster's Third New International Dictionary 2157 (2002).

ruling.[30] As to Sally's admission that she was snooping, the question is was it reasonable for the trial court to conclude that Sally did not have a clear understanding that she didn't have Runyon's apparent permission to access his laptop unless he was in the room.

We conclude that whether the trial court's resolution of that question is a reasonable one turns on Runyon's burden to prove that Sally clearly understood she could not access his laptop.[31] In *Baird*, the Court of Criminal Appeals explained that when the issue of apparent consent turns on a matter the computer's owner didn't "explicitly verbalize" under the Computer Security statute, the party asserting a statutory violation occurred must prove that the computer's owner conveyed a "clear and manifest understanding" to the person who accessed the computer that the person who accessed the computer did not have the right to access the owner's computer.[32] Thus, the trial court could have reasonably reconciled Sally's testimony that she was "snooping" as evidence that she

---

[30]*State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *Guitterez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007).
[31]*Baird,* 398 S.W.3d at 229.
[32]*Id.* at 230.

felt guilty about prying into Runyon's computer because she thought he might be cheating on her, not as evidence that she did so while having a clear understanding that the only times she could access Runyon's laptop was when he was there.

Second, as to the remaining conflicts Runyon points to in the evidence, we conclude the trial court was also entitled as the factfinder in the hearing to resolve those in favor of the ruling it made denying Runyon's motion to suppress. For instance, the trial court could have reasonably believed that Runyon left his laptop on and unlocked the day Sally accessed the laptop, as Sally claimed. On that view of the evidence, Sally would not have needed a password to access the laptop. Alternatively, the trial court could have concluded that Runyon simply didn't meet his burden of persuasion to establish that he ever made it clear to Sally that based on the fact he had allowed her to use his laptop in the past, she didn't have his permission to use his laptop unless he was there with her and in the same room. In the hearing, Sally testified no express or implied agreement existed with Runyon about "when [she] could use certain electronic devices or not in the home[.]" Given the

deference we must afford to the trial court's historical findings, on this record the trial court could have reasonably chosen to believe Sally's testimony.

In sum, Runyon simply offers a different view of the inferences that he argues the trial court should have drawn from the evidence than the ones the trial court chose to draw after deciding which witnesses it believed. But as the reviewing court, we must defer to the trial court's findings of historical facts since its findings are supported by the evidence.[33] Because the trial court could reasonably conclude Runyon didn't meet his burden of persuasion to establish Sally knowingly violated the Computer Security statute, the trial court applied the law properly in finding the State did not obtain a search warrant based on evidence illegally by another in violation of Article 38.23(a).[34] Because the trial court did not abuse its discretion in denying Runyon's motion to suppress, the issues he raises in his appeals in trial court cause numbers 21-03-03965-CR and 21-03-03966-CR are overruled.

---

[33]*See id.* at 227.
[34]Tex. Code Crim. Proc. Ann. art. 38.23(a); *Thomas*, 586 S.W.3d at 422-23.

Conclusion

Because we conclude Runyon's issues lack merit, we affirm the trial court's judgments in trial court cause numbers 21-03-03965-CR and 21-03-03966-CR.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on May 18, 2023
Opinion Delivered August 16, 2023
Publish

Before Horton, Johnson and Wright, JJ.

28