**AFFIRMED; Opinion Filed January 30, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01720-CR

## STEPHEN MATTHEW POLITO, Appellant
## V.
## THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial District Court
Collin County, Texas
Trial Court Cause No. 219-80376-2012

## MEMORANDUM OPINION
Before Justices Moseley, Bridges, and Evans
Opinion by Justice Moseley

Stephen Matthew Polito was indicted for driving while intoxicated enhanced to a felony based on two prior DWI convictions. After the trial court denied his motion to suppress, Polito pleaded guilty and reserved his right to appeal the ruling on the motion to suppress. (The trial court followed the plea agreement and assessed punishment at six years' confinement, probated for six years.) In three issues, Polito argues the trial court erred because the police did not have reasonable suspicion to conduct the traffic stop, there was no probable cause to arrest him, and his blood was drawn in violation of his statutory and Fourth Amendment rights. The background of the case and the evidence adduced at trial are well known to the parties; thus, we do not recite them here in detail. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We affirm the trial court's judgment.

Allen police officer Joshua Hunt was on patrol when he saw Polito make a right hand

turn from an interior lane, bypassing the right turn lane at the intersection. Polito hit the curb with his right front tire as he stopped. Hunt approached the vehicle and requested Polito's license and proof of insurance. Polito seemed unfamiliar with where he was and said he was going to the bank even though it was nearly midnight. Polito's speech was slurred, his eyes were red and glassy, and his responses were delayed. Polito dropped several cards in his lap trying to hand Hunt his driver's license. When other officers arrived, Hunt told them he did not detect a strong odor of alcohol, but other signs indicated Polito was intoxicated.

Officer Stephen Griffith also saw several signs of intoxication from Polito: glassy eyes, slurred speech, and difficulty answering questions. Polito told Griffith he was going to the bank, but corrected himself to say he was going to the post office to mail a letter. Griffith thought that was odd given the late hour. Polito could not find the letter he was supposed to be dropping off. Polito denied having anything to drink.

Griffith attempted to perform standard field sobriety tests on Polito, but Polito had difficulty completing them. However, Griffith observed several clues of intoxication during the attempted tests. The officers arrested Polito for DWI. A criminal background check showed Polito had two prior DWI convictions. Thus, a blood draw was mandatory. *See* TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B).

On the video recording, a supervising officer instructed Griffith to read the statutory warnings on the DIC-24 form to Polito "word for word." Griffith then had Polito read aloud the first line of the form and follow along as Griffith continued reading. When Griffith paused at one point, Polito spontaneously said, "Yes." Griffith continued reading the form, including the line, "I am now requesting a specimen of your," but instead of reading the word "Breath" or "Blood," Griffith paused and put an "X" in the box marked "Blood." Griffith then told Polito, "In this instance you have two previous convictions for DWI and you have a mandatory blood draw that is required." Polito nodded his head affirmatively and said in Spanish, "Si,

–2–

comprendo." Polito had spoken English prior to this point. Griffith asked in English if Polito understood. Polito again responded, "Si, comprendo." Griffith did not record on the DIC-24 form whether Polito refused to allow the taking of a specimen. Nor did Polito sign the form indicating he refused.

Griffith understood Polito's choice to begin speaking Spanish as an indication he did not intend voluntarily to give a specimen or to cooperate with the investigation. Polito was taken to the hospital where a nurse drew a sample of his blood. There is no indication in the record that Polito resisted the actual blood draw.

The trial court denied Polito's motion to suppress after reviewing the motion, response, affidavits, and exhibits submitted by Polito and the State. The trial court did not make express findings of fact.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of the law to the facts de novo. *Id.* We give almost total deference to the trial court's determination of historical facts, particularly when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Id.*; *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We give the same deference to the trial court's conclusions with respect to mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012) (citing *Guzman v. State*, 955 S.W.2d 85, 87–89 (Tex. Crim. App. 1997)). We review mixed questions of law and fact that do not depend on credibility and demeanor as well as purely legal questions de novo. *State v. Woodward*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011); *Guzman*, 955 S.W.2d at 89.

As a general rule, we view the evidence in the light most favorable to the trial court's ruling and afford the prevailing party the strongest legitimate view of the evidence and all

reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). When the trial court does not make express findings of fact, we assume it made implicit findings of fact in support of its ruling if the findings are supported by the record. *See Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Turrubiate*, 399 S.W.3d at 150.

Polito's first issue argues Hunt lacked reasonable suspicion to stop him for a traffic violation. An officer may lawfully stop and reasonably detain a person for a traffic violation. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992); *see also Terry v. Ohio*, 392 U.S.1, 21 (1968). Reasonable suspicion exists if the officer has specific, articulable facts that reasonably lead to the conclusion the person detained is, has been, or soon will be engaged in criminal activity. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

Hunt's affidavit stated he saw Polito make a right turn from a main lane of traffic, completely bypassing the right turn lane at the intersection. The video supports this testimony. The transportation code provides that an operator making a right turn at an intersection should make both the approach and the turn as close as practicable to the right-hand curb or edge of the roadway. TEX. TRANSP. CODE ANN. § 545.101(a). We conclude the trial court did not abuse its discretion by concluding Hunt had reasonable suspicion to conduct a traffic stop. We overrule Polito's first issue.

Polito's second issue argues there was no probable cause to arrest him for DWI. A peace officer may make a warrantless arrest if there is probable cause for an arrest and a statutory exception to the warrant requirement is met. *See* TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (offense committed within presence or view of peace officer); *McGee v. State*, 105 S.W.3d 609, 614 (Tex. Crim. App. 2003). Probable cause for a warrantless arrest requires that the officer have a reasonable belief based on facts and circumstances within the officer's personal

–4–

knowledge or of which he has reasonable trustworthy information that an offense has been committed. *McGee*, 105 S.W.3d at 614.

The record reflects the officer's affidavit testimony regarding signs of intoxication from Polito and his performance on the field sobriety tests. Although Hunt did not detect the odor of alcohol, he and the other officers testified to specific facts supporting a reasonable conclusion that Polito was intoxicated while driving his vehicle. Polito hit the curb with his vehicle when he pulled over. He was confused about where he was and where he was going. He dropped the contents of his wallet in his lap. He had slurred speech and red glassy eyes. Polito lost his balance when trying to stand heel to toe or raising one leg. He was unable to perform the divided attention test. Griffith testified he observed several clues of intoxication even though Polito failed to complete the field sobriety tests.

Based on a totality of the circumstances, we conclude there was probable cause to arrest Polito without a warrant. We overrule Polito's second issue.

Polito's third issue argues the blood draw was unreasonable because the officers never specifically asked for his consent.[1] Under the implied consent statute, a person arrested for DWI is deemed to have consented to the taking of a breath or blood specimen for purposes of analysis to determine the blood alcohol concentration. TEX. TRANSP. CODE ANN. § 724.011(a). The person retains the right, subject to automatic suspension of his driver's license, to refuse to give a specimen. *Id.* § 724.013. However, the officer "shall require the taking of a specimen of the person's breath or blood" if the person refuses the officer's request and the officer has reliable

---

[1]At oral argument, both parties discussed whether the evidence should have been suppressed under the holding in *Missouri v. McNeely*, 133 S. Ct. 1552 (U.S. 2013). In *McNeely*, the Supreme Court held that "in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *Id.* at 1568. Rather, whether exigent circumstances exist must be determined on a case by case basis. *Id.* at 1559, 1561. We conclude *McNeely* is not applicable here because the State does not rely on the natural dissipation of alcohol in the bloodstream to support an exigent circumstances argument and Polito did not argue section 724.012 violates his Fourth Amendment rights. Polito argued that the seizure was unreasonable under the Fourth Amendment because the officers did not comply with section 724.012.

information from a credible source that at the time of the arrest the person had two or more prior DWI convictions. *Id*. § 724.012(b)(3)(B).[2]

Under the Texas exclusionary rule, evidence obtained in violation of state or federal law may not be admitted against the accused in a criminal case. TEX. CODE CRIM. PROC. ANN. art. 38.23. The primary purpose of the exclusionary rule is to deter police activity that could not have been reasonably believed to be lawful by the officers committing the conduct. *See Drago v. State*, 553 S.W.2d 375, 378 (Tex. Crim. App. 1977). However, not every statutory violation invokes the exclusionary rule. *Roy v. State*, 608 S.W.2d 645, 650–51 (Tex. Crim. App. [Panel Op.] 1980). Evidence should only be excluded if the record shows a causal connection between the illegality and the complained-of evidence. *Roquemore v. State*, 60 S.W.3d 862, 870 (Tex. Crim. App. 2001); *State v. Purdy*, 244 S.W.3d 591, 595 (Tex. App.—Dallas 2008, pet. ref'd).[3] It is the moving party's burden to produce evidence showing this causal connection between the officer's violation of the law and the collection of the evidence. *Pham v. State*, 175 S.W.3d 767,

---

[2]That section provides in part:

> (b) A peace officer *shall require the taking of a specimen* of the person's breath or blood under any of the following circumstances *if the officer arrests the person* for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle or a watercraft *and the person refuses the officer's request* to submit to the taking of a specimen voluntarily:
>
> . . . .
>
> (3) at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person:
>
> . . . .
>
> (B) on two or more occasions, has been previously convicted of or placed on community supervision for an offense under Section 49.04, 49.05, 49.06, or 49.065, Penal Code, or an offense under the laws of another state containing elements substantially similar to the elements of an offense under those sections.

TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B) (emphasis added).

[3]The federal exclusionary rule includes a similar causation requirement. *See Hudson v. Michigan*, 547 U.S. 586, 591–93 (2006) (violation of knock and announce rules did not require exclusion of evidence obtained under a lawful search warrant); *State v. Callaghan*, 222 S.W.3d 610, 613–15 & n.6 (Tex. App.—Houston [14th Dist.] pet. ref'd). Furthermore, even if causation is shown the evidence need not be suppressed if the attenuation of taint principles apply. *See State v. Mazuca*, 375 S.W.3d 294, 300 (Tex. Crim. App. 2012), *cert. denied*, 133 S. Ct. 1724 (U.S. 2013); *Pham v. State*, 175 S.W.3d 767, 772-73 (Tex. Crim. App. 2005) ("Analysis of causal connection and attenuation-of-taint are not the same.").

774 (Tex. Crim. App. 2005).

In his motion to suppress, Polito argued the officer's violation of the transportation code requirement to ask first before drawing blood resulted in an unreasonable seizure of the blood sample in violation of the Fourth Amendment. Polito argues the video establishes that the officer never expressly requested him to submit to the taking of a specimen.

However, in addition to the alleged statutory violation, Polito was required to show a causal connection between that violation and the collection of the evidence. Here, if he had been asked, Polito could have either (1) submitted or (2) refused. In either case, the evidence would have been obtained. If he had consented, the specimen would have been taken. And if he refused, the specimen would still have been taken, because the officer had reliable information from a credible source that Polito had two or more prior convictions for DWI. TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B). Thus, there is no causal connection between the alleged statutory violation—failure to request consent—and the collection of the evidence. Absent proof of this causal connection, the trial court did not err by denying the motion to suppress. *See Pham*, 175 S.W.3d at 774; *Purdy*, 244 S.W.3d at 595. We overrule Polito's third issue.

We affirm the trial court's judgment.

/Jim Moseley/
JIM MOSELEY
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
121720F.U05

–7–



# Court of Appeals
# Fifth District of Texas at Dallas

**JUDGMENT**

STEPHEN MATTHEW POLITO, Appellant

No. 05-12-01720-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial District Court, Collin County, Texas
Trial Court Cause No. 219-80376-2012.
Opinion delivered by Justice Moseley.
Justices Bridges and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 30th day of January, 2014.

/Jim Moseley/

JIM MOSELEY
JUSTICE