FILED IN
COURT OF CRIMINAL APPEALS

June 1, 2015

ABEL ACOSTA, CLERK

PD-0662-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/29/2015 3:27:44 PM
Accepted 6/1/2015 3:10:26 PM
ABEL ACOSTA
CLERK

No. 04-13-00826-CR

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

TAYLOR M. MOSER,                                             Appellant

v.

THE STATE OF TEXAS,                                          Appellee


Appeal from Gillespie County


\*   \*   \*   \*   \*


STATE'S PETITION FOR DISCRETIONARY REVIEW


\*   \*   \*   \*   \*


LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

STACEY M. GOLDSTEIN
Assistant State Prosecuting Attorney
Bar I.D. No. 24031632

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512-463-1660 (Telephone)
512-463-5724 (Fax)

## IDENTITY OF JUDGE, PARTIES, AND COUNSEL

\*   The parties to the trial court's judgment are the State of Texas and Appellant, Taylor M. Moser.

\*   The trial Judge was the Hon. N. Keith Williams.

\*   Counsel for the State at trial and before the Court of Appeals was Steven Wadsworth, Assistant District Attorney, 200 Earl Garrett Street, Suite 202, Kerrville, Texas 78028.

\*   Counsel for the State before the Court of Criminal Appeals is Stacey M. Goldstein, Assistant State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711.

\*   Counsel for Appellant at trial was Harold Danford, 813 Barnett Street, Kerrville, Texas 78028.

\*   Counsel for Appellant before the Court of Appeals were Harold Danford and Jennifer R. Yeager, 813 Barnett Street, Kerrville, Texas 78028.

# TABLE OF CONTENTS

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-iv

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . 2

GROUNDS FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

1.    **Is a challenge to a warrantless, mandatory blood draw based on *Missouri v. McNeely* preserved for appellate review when Appellant did not raise it in a motion to suppress or at the suppression hearing?**

2.    **Is a warrantless, mandatory blood draw conducted pursuant to TEX. TRANS. CODE § 724.012(b)(1)(A)—the resulting death provision— reasonable under the Fourth Amendment?**

3.    **Do the federal and state (TEX. CODE CRIM. PROC. art. 38.23) exclusionary rules require suppression when, at the time of the search, the warrantless blood draw was authorized by TEX. TRANS. CODE § 724.012(b)(1)(A) and binding caselaw?**

4.    **Did exigency justify the warrantless draw when the trooper knew the fatal accident occurred more than two hours before he met with Appellant and he had first investigated the scene, and did the lower court err in failing to consider exigency a basis to uphold the trial court's refusal to suppress?**

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-10

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

i

APPENDIX (Opinion of the Court of Appeals)

# INDEX OF AUTHORITIES

**Cases**

*Cole v. State*, PD-0077-15 (granted April 22, 2015). . . . . . . . . . . . . . . . . . 7, 7 n.6, 8

*Douds v. State*, PD-0857-14 (submitted March 18, 2015).. . . . . . . . . . . . 7 n.7, n.8

*State v. Esparza*, 413 S.W.3d 81 (Tex. Crim. App. 2013).. . . . . . . . . . . . . . . . 6 n.4

*Hailey v. State*, 87 S.W.3d 118 (Tex. Crim. App. 2002). . . . . . . . . . . . . . . . . 10 n.10

*Hernandez v. State*, 176 S.W.3d 821 (Tex. Crim. App. 2005). . . . . . . . . . . . . . 6 n.5

*Holidy v. State*, No. PD-0622-14 (granted Aug. 20, 2014; argued and submitted Jan. 14, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7 n.8

*Leal v. State*, PD-1638-14 (Tex. Crim. App. 2015).. . . . . . . . . . . . . . . . . . . . . 7 n.7

*State v. Mercado*, 972 S.W.2d 75 (Tex. Crim. App. 1998). . . . . . . . . . . . . . . 10 n.10

*Missouri v. McNeely*, 133 S. Ct 1552 (2013).. . . . . . . . . . . . . . . . . . . . . . . . 5, 9-10

*Moser v. State*, No. 04-13-00826-CR, 2015 Tex. App. LEXIS 4318 (Tex. App.—San Antonio April 29, 2015) (not designated for publication). . . . . . . . . . . . . . . . . passim

*Pham v. State*, 175 S.W.3d 767 (Tex. Crim. App. 2005). . . . . . . . . . . . . . . . . 6 n.4

*Reeder v. State*, No. PD-0601-14 (granted Aug. 20, 2014; argued and submitted Jan. 15, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7 n.8

*Schmerber v. California*, 384 U.S. 757 (1966). . . . . . . . . . . . . . . . . . . . . . . . . 9-10

*Villarreal v. State*, No. PD-0306-14, 2014 Tex. Crim. App. LEXIS 1898 (Tex. Crim. App. Nov. 26, 2014, reh'g granted).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7 n.6

*Weems v. State*, No. PD-0635-14 (granted Aug. 20, 2014; argued and submitted Nov. 17, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7 n.8

## Statutes and Rules

TEX. CODE CRIM. PROC. art. 28.01 § 2.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

TEX. CODE CRIM. PROC. art. 38.23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

TEX. TRANS. CODE § 724.012(b)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . 2 n.1, 3 n.2

TEX. R. APP. P. 33.1(a)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

TEX. R. APP. P. 44.2.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

No. 04-13-00826-CR

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

TAYLOR M. MOSER,                                                                  Appellant

v.

THE STATE OF TEXAS,                                                              Appellee


Appeal from Gillespie County


* * * * *

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

* * * * *

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

The State Prosecuting Attorney respectfully urges this Court to grant review.

**STATEMENT REGARDING ORAL ARGUMENT**

The State does not request oral argument.

**STATEMENT OF THE CASE**

After a hearing, the trial denied Appellant's motions to suppress challenging the legality of his arrest and compliance with the mandatory blood draw statute. Appellant pled guilty to intoxication manslaughter and was sentenced to ten years'

1

imprisonment and fined $500. The court of appeals reversed the suppression ruling, holding that the warrantless blood draw[1] violated the Fourth Amendment. The court then rejected the State's argument that the remedy of suppression should not be applied.

## STATEMENT OF PROCEDURAL HISTORY

The court of appeals reversed the trial court's denial of Appellant's motion to suppress. *Moser v. State*, No. 04-13-00826-CR, 2015 Tex. App. LEXIS 4318 (Tex. App.—San Antonio April 29, 2015) (not designated for publication). The State did not seek rehearing.

## GROUNDS FOR REVIEW

1. **Is a challenge to a warrantless, mandatory blood draw based on *Missouri v. McNeely* preserved for appellate review when Appellant did not raise it in a motion to suppress or at the suppression hearing?**

2. **Is a warrantless, mandatory blood draw conducted pursuant to TEX. TRANS. CODE § 724.012(b)(1)(A)—the resulting death provision— reasonable under the Fourth Amendment?**

3. **Do the federal and state (TEX. CODE CRIM. PROC. art. 38.23) exclusionary rules require suppression when, at the time of the search, the warrantless blood draw was authorized by TEX. TRANS. CODE § 724.012(b)(1)(A) and binding caselaw?**

4. **Did exigency justify the warrantless draw when the trooper knew the fatal accident occurred more than two hours before he met with Appellant and**

---

[1] Appellant's blood was drawn under TEX. TRANS. CODE § 724.012(b)(1)(A) because his friend (and backseat passenger) died as a result of the rollover accident.

**he had first investigated the scene, and did the lower court err in failing to consider exigency a basis to uphold the trial court's refusal to suppress?**

## ARGUMENT

**1. Appellant's challenge to the warrantless mandatory blood draw was not preserved.**

Appellant filed three suppression motions. 1 CR 52-62. The first challenged his arrest. The second challenged the mandatory blood draw pursuant to Texas Transportation Code Section 724.012(b)(1)(A).[2] And the third challenged the admissibility of the blood drawn for purposes of medical care.

In his motion to suppress based on the mandatory blood draw, Appellant argued, in part: (1) he was arrested without warrant, reasonable suspicion, or probable cause in violation of the Fourth Amendment; (2) because he was unlawfully arrested, there is no "deemed consent" under Transportation Code Section 724.011; (3) the Trooper failed to give the statutory warnings required by Transportation Code Section 724.015; (4) the Appellant did not voluntarily, knowingly, and intelligently consent; (5) the blood was not drawn within a reasonable amount of time; (6) the Trooper did not have a reasonable belief that Appellant caused the accident; (7) the Trooper did not specify any facts showing that Appellant was intoxicated; and (8) the blood was not drawn from a qualified technician or in a sanitary place as required by Section

---

[2] Section 724.012(b)(1)(A) requires a police officer to obtain a specimen when the officer reasonably believes that an individual has died.

3

724.017. 1 CR 56-58.

At the suppression hearing, the trial court asked Appellant which of three motions he wished to have heard. 2 RR 4. Appellant stated that the motions based on the arrest and mandatory blood draw. 2 RR 4. He explained that he narrowed the issues raised in his motions:

> That's the gist, and it's kind of a combination of the motion to suppress the arrest of the Defendant and the motion to suppress the blood taken by DPS. I've kind of combined those two and narrowed it down, but that's what we're here for, probable cause to arrest. If he didn't have probable cause to arrest, then it's our position the blood test should be suppressed.

2 RR 5.

Further, in closing, Appellant argued that the offense was not committed in the Trooper's presence, as required for an arrest according to Texas Code of Criminal Procedure Article 14.01. 2 RR 71-72. Appellant also stated that the facts known to the Trooper were insufficient to provide probable cause of DWI or that the accident was caused by Appellant's intoxication. 2 RR 72-75. Appellant then argued that he was never arrested, which is a necessary predicate for a mandatory draw. 2 RR 75-76.

The trial court denied Appellant's suppression requests. 2 RR 78. He concluded that there was probable cause to arrest, that Appellant had been advised he was under arrest for purposes of the blood draw, and therefore was deemed to have impliedly consented. 2 RR 78. The trial court then asked Appellant's attorney

4

whether any further hearings were needed because "there are two others."[3] 2 RR 78.

Counsel answered, "No." 2 RR 78.

On appeal, for the first time, Appellant challenged the legality of the draw based on *Missouri v. McNeely*, 133 S. Ct 1552 (2013). Appellant's Brief, at 6-7. The court of appeals ruled in his favor, holding that the draw was not reasonable. *Moser*, 2015 Tex. App. LEXIS 4318, at *10.

The court of appeals erred by not considering preservation before addressing the merits because Appellant failed to lodge a specific and timely objection. *See* TEX. R. APP. P. 33.1(a)(1)(A) (requiring a complaint to be timely and the reason to be made with "sufficient specificity" to make the trial court aware of it). Appellant's motions and suppression hearing arguments never challenged the validity of the draw mandated by Section 724.012(b)(1)(A) based on *McNeely*. Contrary to Appellant's assertion in the court of appeals, Appellant's Brief, at 6, citation to the Fourth Amendment alone is insufficient to raise a claim that Section 724.012(b) violates the Fourth Amendment by not requiring a warrant or that an officer who complies with the statute must obtain a warrant.

Additionally, Appellant was responsible for timely designating any suppression

_____

[3] This statement belies Appellant's and the court of appeals' belief that the trial court ruled on all the motions and issues included in the motions. *See* Appellant's Brief in the Court of Appeals, at 3; *Moser*, 2015 Tex. App. LEXIS 4318, at *2.

issue(s) under Texas Code of Criminal Procedure Article 28.01, Section 2. That provision states that pretrial hearing matters not raised or filed seven days before the hearing cannot thereafter be raised or filed, except with the court's permission and good cause shown. TEX. CODE CRIM. PROC. art. 28.01 § 2. Unless challenged by a specific objection or motion, the State need not present evidence to satisfy its ultimate burden with respect to any viable, potential issue that could be raised by the defendant.[4] If no rule preventing unfair surprise existed, then the State would be saddled with the burden of securing all the necessary witnesses to address each and every possible legal issue a defendant could decide to raise at a scheduled hearing.[5]

This Court should grant review and summarily remand for the court of appeals

---

[4] *See Pham v. State*, 175 S.W.3d 767, 773-74 (Tex. Crim. App. 2005) ("We have long held that the burden of persuasion is properly and permanently placed upon the shoulders of the moving party. When a criminal defendant claims the right to protection under an exclusionary rule of evidence, it is his task to prove his case.") (internal quotes deleted); *cf. State v. Esparza*, 413 S.W.3d 81, 86 (Tex. Crim. App. 2013) (while the proponent of scientific evidence carries the burden of proving reliability at a pretrial hearing or at trial, the proponent is not obligated to satisfy the burden until the opponent objects on the basis of reliability). Nor should such hearings be treated as a mechanism for discovery.

[5] *Cf. Hernandez v. State*, 176 S.W.3d 821, 825-26 (Tex. Crim. App. 2005) (State's failure to provide TEX. R. EVID. 404(b) notice indicates that it does not think an extraneous offense is relevant, thereby relieving the defendant of having to prepare to defend against it).

6

to consider whether Appellant preserved his claim.[6] Alternatively, this Court should hold that Appellant failed to preserve error. Recent action by the Court indicates that it has become interested in setting firmer guidelines with respect to pretrial suppression issue preservation requirements.[7]

## 2. Alternatively, the draw was reasonable under the Fourth Amendment.

The warrantless blood draw, conducted under Texas Transportation Code Section 724.012(b)(1)(A), was reasonable under Fourth Amendment jurisprudence. Review should be granted because the same issue is pending in *Cole v. State*, PD-0077-15 (granted April 22, 2015).[8]

---

[6] Because of this threshold issue and the viable exigency claim, it may not be necessary for the Court to hold this petition until *Villarreal v. State*, No. PD-0306-14, 2014 Tex. Crim. App. LEXIS 1898 (Tex. Crim. App. Nov. 26, 2014, reh'g granted), and *Cole v. State*, PD-0077-15 (granted April 22, 2015), are resolved.

[7] This Court remanded *Leal v. State*, PD-1638-14 (Tex. Crim. App. 2015) (not designated for publication), in March for the court of appeals to determine whether Appellant's motion for new trial, which was considered at a live hearing, preserved a challenge to the legality of a warrantless blood draw. And in September 2014, the Court granted review in *Douds v. State*, PD-0857-14 (submitted March 18, 2015), to consider, in part, whether Appellant's challenge to a warrantless blood draw was preserved when he filed a boilerplate motion to suppress.

[8] The same issue, as it relates to the repeat offender provision, is pending on rehearing in *Villarreal*, and in *Holidy v. State*, No. PD-0622-14 (granted Aug. 20, 2014; argued and submitted Jan. 14, 2015), and *Reeder v. State*, No. PD-0601-14 (granted Aug. 20, 2014; argued and submitted Jan. 15, 2015). Two other granted cases deal with accidents involving non-fatal injuries. *Douds*, PD-0857-14 (granted Sept. 17, 2014 and submitted March 18, 2015); *Weems v. State*, No. PD-0635-14 (granted Aug. 20, 2014; argued and submitted Nov. 17, 2014).

7

**3. Even if foregoing issues are resolved in Appellant's favor, the federal and state exclusionary rules do not require suppression because police relied on binding law authorizing the search at the time it was conducted.**

In *Cole*, PD-0077-15, this Court also granted review to decide whether the remedy of suppression under the federal and state (TEX. CODE CRIM. PROC. art. 38.23) exclusionary rules, which are intended to deter police misconduct, is appropriate when the blood draw was conducted pursuant to a presumptively valid statute and case law interpreting it. Therefore, the Court should grant review here to determine the propriety of the court of appeals' determination that the federal and state exclusionary rules are applicable. *See Moser*, 2015 Tex. App. LEXIS 4318, at \*10.

**4. Exigent Circumstances Justified the Draw.**

Dispatch called Trooper Bacon about the rollover accident at 4:00 a.m.[9] 2 RR 8. He arrived on the scene around 4:16 and discussed the investigation with other officers already on site. 2 RR 8-21, 30. He learned that Appellant had been transported to the hospital and that the backseat occupant—Jesus Martinez—had died. 2 RR 14. The passenger-seat occupant told him that the three had shared a bottle of vodka earlier in the day. 2 RR 15. Bacon observed a partially filled beer can that had been found in the car. 2 RR 12, 42. When Bacon was informed that Appellant was going to be discharged from the hospital, he stopped investigating and headed to the

---

[9] The accident occurred at approximately 2:30 a.m. but Bacon did not know the approximate time until he investigated further after leaving the hospital. 2 RR 25.

hospital. 2 RR 20. Bacon visited with Appellant at 5:40 for five to ten minutes. 2 RR 24. He gave the statutory warnings at 5:47, 2 RR 25, and placed him under arrest at 5:57. 2 RR 43.

In *McNeely*, the Supreme Court held that the natural dissipation of alcohol from the blood stream does not establish exigency *per se* but is a factor to consider in a totality of the circumstances analysis. *Id*. at 1558-63. The Court observed that in *Schmerber v. California*, 384 U.S. 757, 771-72 (1966), exigency was present because of the dissipation of alcohol from the blood stream combined with the fact that the officer had to transport the accused to the hospital and investigate the accident scene. *McNeely*, 133 S. Ct. at 1560.

Here, the objective facts support Bacon's decision to act without a warrant. Bacon knew that the accident occurred before 4:00 a.m., when he was called by dispatch. Having arrived at the scene first to investigate, it took him another hour and forty minutes to meet with Appellant at the hospital. Appellant was arrested seventeen minutes later. So nearly two hours passed from the time dispatch called until the time he arrested Appellant. Bacon knew Appellant had shared a bottle of vodka at some unspecified time earlier in the day, and he knew an open can of beer had been found in the car. From these facts and circumstances, Bacon could have reasonably concluded that any further delay to obtain a warrant would likely thwart

9

the State's ability to obtain evidence of intoxication. *See McNeely*, 133 S. Ct. at 1561 ("a significant delay in testing will negatively affect the probative value of the results"); *Schmerber*, 384 U.S. at 769 (two-hour delay in drawing blood after the accident).

The court of appeals never considered exigency as a basis to uphold the trial court's ruling.[10] Therefore, in the event the Court rules in Appellant's favor on the issues above, the Court should remand and order the court of appeal to consider whether exigent circumstances justified the warrantless draw. Alternatively, the Court should reverse the lower court's decision on this basis.

---

[10] Exigency is not procedurally defaulted since the State was the winning party in the trial court. *Hailey v. State*, 87 S.W.3d 118, 121-22 (Tex. Crim. App. 2002) ("'Ordinary notions of procedural default' do not require a prevailing party to list or verbalize 'in the trial court every possible basis for upholding' its decision.") (quoting *State v. Mercado*, 972 S.W.2d 75, 77-78 (Tex. Crim. App. 1998)).

## PRAYER FOR RELIEF

The State prays that the Court of Criminal Appeals grant review and summarily reverse the decision of the court of appeals and remand the case for the court to consider whether Appellant's challenge to the warrantless draw was preserved.

Alternatively, the Court should grant review and reverse the court of appeals because (1) Appellant's blood draw claim was not preserved or, alternatively, (2) it erred to hold that the warrantless draw was unreasonable.

Also in the alternative, the court should grant review and reverse the court of appeals and (1) remand for it to consider exigency or, alternatively, (2) hold that exigent circumstances justified the warrantless draw.

Finally, should the Court reject the foregoing arguments, the case should be remanded for the court of appeals to consider whether the erroneous admission was harmful. *See* TEX. R. APP. P. 44.2.

Respectfully submitted,

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No.13803300


/s/ STACEY M. GOLDSTEIN
Assistant State Prosecuting Attorney

Bar I.D. No. 24031632

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512-463-1660 (Telephone)
512-463-5724 (Fax)

12

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies that according to the WordPerfect word count tool this document contains 2,196 words, exclusive of the items excepted by TEX. R. APP. P. 9.4(i)(1).

/s/ STACEY M. GOLDSTEIN
Assistant State Prosecuting Attorney

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the State's Petition for Discretionary

Review has been served on May 29, 2015, via certified electronic service provider to:

Hon. Steven Wadsworth
200 Earl Garrett Street
Suite 202
Kerrville, Texas 78028

Hon. Harold Danford
Hon. Jennifer R. Yeager
813 Barnett Street
Kerrville, Texas 78028


/s/ STACEY M. GOLDSTEIN
Assistant State Prosecuting Attorney

14

# APPENDIX



**Taylor M. MOSER, Appellant v. The STATE of Texas, Appellee**

**No. 04-13-00826-CR**

**COURT OF APPEALS OF TEXAS, FOURTH DISTRICT, SAN ANTONIO**

*2015 Tex. App. LEXIS 4318*

**April 29, 2015, Delivered**
**April 29, 2015, Filed**

**NOTICE:** PLEASE CONSULT THE TEXAS RULES OF APPELLATE PROCEDURE FOR CITATION OF UNPUBLISHED OPINIONS.

**PRIOR HISTORY:** [*1] From the 216th Judicial District Court, Gillespie County, Texas. Trial Court No. 4960. Honorable N. Keith Williams, Judge Presiding.

**DISPOSITION:** REVERSED AND REMANDED.

**COUNSEL:** FOR APPELLANT: Harold J. Danford, Danford Law Firm, Kerrville, TX.

FOR APPELLEE: Steven A. Wadsworth, Assistant District Attorney, Kerrville, TX.

**JUDGES:** Opinion by: Karen Angelini, Justice. Sitting: Sandee Bryan Marion, Chief Justice, Karen Angelini, Justice, Marialyn Barnard, Justice.

**OPINION BY:** Karen Angelini

**OPINION**

**MEMORANDUM OPINION**

REVERSED AND REMANDED

Taylor M. Moser appeals the trial court's denial of his motions to suppress evidence. We conclude the trial court did not err in denying Moser's motion to suppress his arrest. However, because Moser's rights under the *Fourth Amendment* were violated by the taking of a warrantless, nonconsensual blood draw, the trial court erred in denying his motions to suppress the results of the blood tests. We therefore reverse the trial court's judgment and remand the cause for a new trial.

**BACKGROUND**

Moser filed three separate motions to suppress in the trial court. The first motion sought suppression of his arrest. The second motion sought suppression of the results of a blood test taken at the direction of the Texas Department of Public [*2] Safety. The third motion sought suppression of results of any blood tests performed by the hospital. The trial court heard all three motions at an evidentiary hearing. The State stipulated that Moser was arrested without a warrant and his blood was taken without a warrant.

At the hearing, Trooper Mike Bacon, an officer with the Department of Public Safety in Fredericksburg, Texas, testified that on September 14, 2009, he was the on-call trooper for Gillespie County. At about 4:00 a.m., he was at home when he received a call from Fredericksburg dispatch regarding a one-car rollover accident on Highway 16. He then met with Sergeant Walter Todd at the Gillespie County Sheriff's Office. According to Trooper Bacon, Sergeant Todd was searching for one of the occupants of the vehicle who had left the scene of the accident. Sergeant Todd told Trooper Bacon the location of the accident. When Trooper Bacon arrived at the scene, he was informed by Deputy Moellering and Deputy Robinson that the person who had identified himself as the driver of the vehicle had been transported to the hospital; that another occupant of the vehicle had left the scene; that Sergeant Todd was searching for him; and [*3] that they had secured the scene. According to Trooper Bacon, the person who identified himself as the driver was Appellant Moser.

Trooper Bacon testified that he investigated the crash scene. He saw an open twelve-ounce can of beer wedged between the driver's seat and the driver's floorboard area. The justice of peace on site, Justice Rech, told Trooper Bacon that there had been a fatality as a result of the accident. Trooper Bacon testified that he determined the vehicle had been traveling northbound on State Highway 16. The car had crossed the bridge going over the Pedernales River. It then drifted across the

double yellow line into the southbound lane, at which time it made a hard right, side-skidded into the northbound ditch, and then began to overturn several times.

Trooper Bacon then heard over the radio that Sergeant Todd had located the other occupant and was returning him to the scene of the accident. When they arrived, Trooper Bacon talked to the other occupant, Jesse Johnson. Johnson said that Moser had picked him up earlier in the day, along with a female friend, and they had driven to another friend's house in Fredericksburg where they consumed a bottle of vodka between **[*4]** the four of them. Johnson told Trooper Bacon that the deceased, Jesus Martinez, then called Moser and told Moser he could get more alcohol. Johnson and Moser left and drove to Kerrville where they picked up Martinez. Johnson said that they then drove to another residence in Kerrville where they obtained some beer. They were all returning to the first residence in Fredericksburg when the crash occurred. Johnson, Moser, and Martinez were all under the age of 21.

Johnson said Moser was the driver of the vehicle. Johnson told Trooper Bacon that when Moser drifted across the double yellow line, Johnson reached over and helped him pull the wheel back to correct the car back into the northbound lane. Johnson said Moser overcorrected and the accident occurred. Trooper Bacon then asked Johnson to remove his shirt so that he could verify through the seatbelt marking of Johnson's skin where Johnson had been seated. Trooper Bacon testified that Johnson had an abrasion from his right shoulder across to his left hip, which indicated Johnson was sitting in the passenger seat. Trooper Bacon testified that he was then informed Moser was about to be released from the hospital, so he stopped his interview **[*5]** with Johnson and went to the hospital.

When Trooper Bacon arrived at the hospital, Moser was in the ER treatment room with a leg injury. Moser's parents and grandparents were present. Trooper Bacon identified himself to Moser, and Moser invoked his right to counsel. Trooper Bacon testified that he did not perform any field sobriety tests on Moser because Moser was obviously injured and had received some kind of pain medication. Trooper Bacon testified that he detected the odor of alcohol, but said that hospital rooms typically have an alcohol smell. Trooper Bacon's best estimate was that the accident occurred at 2:35 a.m. He requested a blood specimen from Moser at 5:47 a.m. Moser refused to provide one. Trooper Bacon testified that he then obtained an involuntary blood specimen, relying on the Texas Transportation Code for authority.

On cross-examination, Trooper Bacon testified that Officer Moellering had said he had not smelled alcohol on Moser because he was not close enough to Moser to be able to detect any smell. Trooper Bacon testified that Officer Robinson said he had smelled alcohol on Moser's person. According to Trooper Bacon, the beer can found in the car still had alcohol **[*6]** in it and was cool to the touch. Trooper Bacon testified that the car had overturned at least two times and that a person could have alcohol on his person as a result of the car rolling over. Trooper Bacon also admitted that while Johnson had said the four individuals had consumed a full bottle of vodka, Trooper Bacon did not know how much each person drank. Trooper Bacon also said that Johnson had told him he, Moser, and Martinez had been stopped by a Kerrville police officer before the accident, had been giving a warning, and were then allowed to leave. Trooper Bacon also testified that although he arrested Moser at the hospital, he left Moser at the hospital because he had broken his leg. Thus, Trooper Bacon did not physically take Moser into custody. Trooper Bacon also testified that he had not seen the dash cam footage at the time he made the arrest. He did not perform a horizontal gaze nystagmus test because Moser said he had bumped his head during the accident. According to Trooper Bacon, a person with a head injury is not a good candidate for the HGN test. Further, Trooper Bacon said the hospital had given Moser pain medication.

Thus, at the evidentiary hearing, the State elicited **[*7]** testimony that Trooper Bacon ordered the warrantless blood draw pursuant to *section 724.012(b)(1)(A) of the Texas Transportation Code*. Section 724.012(b)(1)(A) requires the taking of a nonconsensual blood specimen of a person if the person is arrested for driving while intoxicated, was the operator of a motor vehicle involved in an accident that the officer reasonably believes occurred as a result of the offense and, at the time of the arrest, the officer reasonably believes that as a direct result of the accident an individual has died. *See* TEX. TRANSP. CODE ANN. § *724.012(b)(1)(A)*. After hearing all the evidence, the trial court denied the motions to suppress. The record does not reflect that Moser requested the trial court to make findings of fact and conclusions of law, and no such findings are included in the appellate record. *See State v. Elias, 339 S.W.3d 667, 676-77 (Tex. Crim. App. 2011)* (requiring trial court to make essential findings when requested). Moser appeals.

### STANDARD OF REVIEW

The trial court is the sole trier of fact at a suppression hearing and thus evaluates witness testimony and credibility. *Torres v. State, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005)*. When we review a trial court's ruling on a motion to suppress, we give great deference to the trial court's determination of historical facts while reviewing the trial court's application of the law *de novo*. *Id*. When, as here, the **[*8]** trial court does not make findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact that support its ruling, as long as such implicit findings are supported by the record. *Id*.

The initial burden of proof on a motion to suppress rests with the defendant, who meets this burden by

showing that the search or seizure occurred without a warrant. *Id.* Then, the burden shifts to the State to prove the reasonableness of the warrantless search or arrest. *Id.*

## DISCUSSION

### A. Motions to Suppress Blood Test Results

In his first issue, Moser argues the trial court erred in denying his motions to suppress the results of the warrantless, nonconsensual blood tests because the admission of such results violates his rights under the *Fourth Amendment* to the Constitution. For support, Moser relies on the Supreme Court's decision in *Missouri v. McNeely, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013)*, and this court's decision in *Weems v. State, 434 S.W.3d 655 (Tex. App.--San Antonio 2014, pet. granted)*. In *Weems, 434 S.W.3d at 665*, we analyzed *McNeely* and concluded that *section 724.012(b)(3)(B)* does not constitute a valid exception to the *Fourth Amendment*'s warrant requirement. *See also McNeil v. State, 443 S.W.3d 295, 299-300 (Tex. App.--San Antonio 2014, pet. filed)*. Similarly, the Texas Court of Criminal Appeals recently held in *State v. Villarreal, No. PD-0306-14, 2014 Tex. Crim. App. LEXIS 1898, 2014 WL 6734178, at *20 (Tex. Crim. App. Nov. 26, 2014)*, that "the provisions in the Transportation Code [*9] do not, taken by themselves, form a constitutionally valid alternative to the *Fourth Amendment* warrant requirement." The court of criminal appeals explained that "the Supreme Court's holding in *McNeely* makes clear that drawing the blood of an individual suspected of DWI falls under the category of cases holding that 'a warrantless search of a person is reasonable only if it falls within a *recognized* exception' to the warrant requirement." *Villarreal, 2014 Tex. Crim. App. LEXIS 1898, 2014 WL 6734178, at *20* (quoting *McNeely, 133 S. Ct. at 1558*) (emphasis added). The court of criminal appeals emphasized that the *McNeely* Court "explained that such an intrusion implicates an individual's 'most personal and deep-rooted expectations of privacy.'" *Villarreal, 2014 Tex. Crim. App. LEXIS 1898, 2014 WL 6734178, at *20* (quoting *McNeely, 133 S. Ct. at 1558*). According to the court of criminal appeals, "[t]hese principles from *McNeely*--the recognition of the substantial privacy interests at stake and the applicability of the traditional *Fourth Amendment* framework that requires either a warrant or an applicable exception--apply with equal force to this case." *Villarreal, 2014 Tex. Crim. App. LEXIS 1898, 2014 WL 6734178, at *20*. Thus, the court of criminal appeals "reject[ed] the State's assertion that a warrantless, nonconsensual blood draw conducted pursuant to those provisions [of the Transportation Code] can fall under one of the established exceptions to the warrant requirement." *Id.* The court [*10] of criminal appeals further "reject[ed] the State's suggestion that such a search may be upheld under a general *Fourth Amendment* balancing test." *Id.*

The State has not argued that any other recognized exception to the *Fourth Amendment*'s warrant requirement applies in this case. Instead, it argues that the Texas exclusionary rule and federal exclusionary rule should not apply because the officer relied on *section 724.012* in good faith. We, however, have already rejected this argument. *See McNeil, 443 S.W.3d at 303*; *Weems, 434 S.W.3d at 666-67*; *Fitzgerald v. State, No. 04-13-00662-CR, 2014 Tex. App. LEXIS 8208, 2014 WL 3747270, at * 2 (Tex. App.--San Antonio July 30, 2014, pet. filed)*.

Because the State did not show that the warrantless blood draw was reasonable under the *Fourth Amendment*, Moser's motions to suppress the blood test results should have been granted. After the trial court denied Moser's motions to suppress, he decided to plead guilty. We cannot determine beyond a reasonable doubt that the trial court's failure to grant his motions to suppress the blood test results did not contribute in some measure to the State's leverage in obtaining his guilty plea and thus to his conviction. *See TEX. R. APP. P. 44.2(a)*; *Kennedy v. State, 338 S.W.3d 84, 102-03 (Tex. App.--Austin 2011, no pet.)*. Therefore, we hold the trial court erred in denying Moser's motions to suppress the results of the blood tests.[1]

> 1 In a third issue, Moser also argues that the blood test results should have [*11] been suppressed because the arresting officer had no reasonable belief as required by *section 724.012(b)* that the accident resulting in death was caused by intoxication. Having determined that the trial court should have suppressed the blood test results, we need not reach this issue.

### B. Motion to Suppress Arrest

In his second issue, Moser argues that the trial court erred in denying his motion to suppress his arrest because the arresting officer lacked probable cause to arrest Moser for intoxication manslaughter. "Generally, a warrantless arrest is, pursuant to the *Fourth Amendment*, unreasonable *per se* unless the arrest fits into one of a 'few specifically defined and well delineated exceptions.'" *Torres v. State, 182 S.W.3d 899, 901 (Tex. Crim. App. 2005)* (quoting *Minnesota v. Dickerson, 508 U.S. 366, 372, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993))*. "A peace officer may arrest an individual without a warrant only if probable cause exists with respect to the individual in question and the arrest falls within one of the exceptions set out in *TEX. CODE CRIM. PROC. art. 14.01-14.04*." *Torres, 182 S.W.3d at 901*. *Article 14.03 of the Texas Code of Criminal Procedure* provides that a peace officer may arrest without a warrant "persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony, violation of Title 9, Chapter 42, Penal Code, breach of the peace, or offense under *Section 49.02, Penal Code* . . . ."[2] *TEX. CODE [*12] CRIM. PROC. ANN. art. 14.03* (West Supp. 2014).

> 2 Moser argues only that the officer did not have

probable cause for the warrantless arrest.

"Probable cause for a warrantless arrest requires that an officer have a reasonable belief that, based on facts and circumstances within the arresting officer's personal knowledge, *or of which the officer has reasonably trustworthy information*, an offense has been committed." *Torres, 182 S.W.3d at 902* (emphasis added) (citations omitted). Thus, the arresting officer need not *personally* observe all the facts relating to probable cause but may rely on reasonably trustworthy information. *See id.*

"The test for probable cause is an objective one, unrelated to the subjective beliefs of the arresting officer, and it requires a consideration of the totality of circumstances facing the arresting officer." *Amador v. State, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009)* (citations omitted). "A finding of probable cause requires 'more than bare suspicion' but 'less than . . . would justify . . . conviction.'" *Id.* (quoting *Brinegar v. United States, 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949))* (alteration in original). "[P]robable cause must be based on facts, not opinions." *Torres, 182 S.W.3d at 902*.

In support of his argument that Trooper Bacon had no probable cause to arrest him in this case, Moser relies on *Torres v. State, 182 S.W.3d at 902-03*, a case in which the court of criminal appeals held **[*13]** no probable cause existed to arrest the appellant for driving while intoxicated because the arresting officer relied on other officers' *opinions* that appellant was intoxicated and not on specific, articulable *facts*. Here, however, Trooper Bacon did not rely on opinions from the other officers, but instead relied on specific facts and circumstances he learned from reasonably trustworthy sources. When he arrived at the scene of the one-car accident, Trooper Bacon was informed by other law enforcement officers that Moser identified himself as the driver of the vehicle and had been transported to the hospital. Trooper Bacon was also informed by an officer that the officer had smelled alcohol on Moser. When Trooper Bacon inspected the vehicle involved in the accident, he saw an open, cool, and partially full can of beer "wedged between the driver's seat and the driver's floorboard area." Trooper Bacon then spoke with a justice of the peace, who confirmed that one of the passengers had died as a result of the accident. In examining the scene, Trooper Bacon determined that the vehicle involved in the accident had drifted into the on-coming lane of traffic, crossed the centerline, turned hard **[*14]** back into its own lane of travel, went off the roadway, and then rolled over. Trooper Bacon then interviewed a passenger of the vehicle, Johnson, who said that he,

Moser, and two others had consumed a bottle of vodka earlier. Johnson told him that "[a]t some point during the consumption of the bottle of vodka," the deceased called Moser and said that he could obtain more alcohol. Moser and Johnson drove from Fredericksburg to Kerrville to pick up the deceased, obtained beer, and were returning to Fredericksburg when the accident occurred. Johnson said that Moser was driving the vehicle and had "drifted over into the oncoming lane of traffic." "Johnson reached over and grabbed the steering wheel to kind of pull them back into the right lane of traffic." Moser overcorrected and the vehicle rolled. Trooper Bacon then asked Johnson to lift his shirt to confirm that Johnson was indeed the passenger of the vehicle. Trooper Bacon testified Johnson had an abrasion mark from the seatbelt confirming he had been the passenger. Under these facts and the totality of circumstances known to Trooper Bacon, he had probable cause to arrest Moser for intoxication manslaughter.

Moser emphasizes that Trooper **[*15]** Bacon did not conduct any field sobriety tests and did not testify that Moser had slurred speech or blood shot eyes. Moser further emphasizes that he had been stopped by another officer for speeding before the accident and had only been given a warning ticket and that the open can of beer in the car during the roll-over accident "could account for the odor on [his] person." While Moser emphasizes these facts in favor of a finding that he was not intoxicated, a finding of probable cause can be supported by "less than . . . would justify . . [a] conviction" and need only be "more than bare suspicion." *Brinegar v. United States, 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949)*. Further, under our standard of review, we must defer to factual findings implicitly made by the trial court. *See Torres, 182 S.W.3d at 902*. We therefore hold that Trooper Bacon had probable cause to arrest Moser.

## CONCLUSION

Because Trooper Bacon had probable cause to arrest Moser, the trial court did not err in denying Moser's motion to suppress his arrest. However, because Moser's rights under the *Fourth Amendment* were violated by the warrantless, nonconsensual blood draw, the trial court erred in denying Moser's motions to suppress the blood test results. And, Moser was harmed as a result of the trial court's error. We therefore **[*16]** reverse the trial court's judgment and remand this cause for a new trial.

Karen Angelini, Justice

Do not publish